NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

2nd Circuit Court-Plymouth Family Division
No. 2022-0303


IN RE H.B.; IN RE G.B.

Submitted: November 10, 2022
Opinion Issued: February 1, 2023


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Laura E. B. Lombardi, senior assistant attorney general, on the brief), for the New Hampshire Division for Children, Youth and Families.


Jorel V. Booker, of Dover, by memorandum of law, for Mother.


BASSETT, J. The New Hampshire Division for Children, Youth and Families (DCYF) appeals an order of the Circuit Court (Boyle, J.) dismissing its neglect petitions against the respondent, mother of H.B. and G.B. (Mother). DCYF argues that the trial court erred when it dismissed the petitions because DCYF did not meet its burden of proving that any deprivation of parental care or control, subsistence, or education identified in RSA 169-C:3, XIX(b) was "not due primarily to the lack of financial means" of the parents. RSA 169-C:3, XIX(b) (2022). We vacate and remand.

The record supports the following facts. On three occasions in 2021, DCYF received reports of concern regarding Mother's alcohol use and its impact on her parenting. DCYF conducted assessments in response to these reports, and none resulted in DCYF filing a neglect petition against Mother.

On October 21, 2021, an incident occurred that resulted in another report to DCYF concerning Mother's alcohol use. Police received a call that there was an intoxicated woman with a juvenile at a gas station. An officer arrived at the gas station at approximately noon, and found Mother standing outside her vehicle. H.B. was with her. The officer asked if she had driven there, and she responded that she had. He also asked if she had been drinking, and she responded that she had four shots of liquor two hours prior, at 10:00 a.m. The officer conducted a field sobriety test, determined that Mother was impaired, and placed her under arrest. The officer conducted an inventory of Mother's vehicle, and found miniature bottles of liquor and, on the front seat, a coffee cup containing alcohol. Another police officer filed a report of concern with DCYF, and Mother was charged with aggravated driving under the influence, driving with an open container, and endangering the welfare of a child.

That day, a DCYF child protective services worker (CPSW) met with Mother and the children's father (Father) to discuss a safety plan. Because Mother would not agree to a safety plan, the CPSW created one only with Father, in which Father would be responsible for caring for the children and Mother could have only limited contact with them.

Mother continued to drink following her arrest. The CPSW referred Mother to a treatment program, but Mother did not engage in treatment. Over the next few months, the CPSW modified the safety plan three times, once because Mother violated the plan. In February 2022, DCYF filed neglect petitions against Mother regarding both H.B. and G.B. Following the filing of the petitions, Mother entered treatment for substance use.

The trial court held an adjudicatory hearing on the petitions on March 25, 2022. Following the hearing, the trial court concluded that, "under the serious impairment definition," it was likely that the children's physical safety would suffer "if their mom is constantly under the influence of alcohol." Nonetheless, the trial court found that DCYF had presented insufficient evidence to support a finding of neglect. The trial court reasoned that DCYF offered "no evidence about the financial status of the parents," and DCYF therefore failed to meet its burden of showing that any "deprivation is not due primarily to the lack of financial means of the parents, guardian, or custodian." RSA 169-C:3, XIX(b) (defining "[n]eglected child"). Accordingly, the trial court dismissed the petitions. DCYF filed a motion for reconsideration, which the trial court denied. This appeal followed.

On appeal, DCYF argues that the trial court erred as a matter of law when it dismissed the neglect petitions due to the lack of evidence regarding the parents' financial means, when the alleged neglect was due only to Mother's alcohol use. Mother counters that the trial court did not err because DCYF, by failing to present evidence of the parents' financial means, did not

fulfill its statutory duty of proving each element of neglect. We conclude that the trial court erred as a matter of law when it determined that DCYF was required to present evidence of the parents' financial means to meet its burden under RSA 169-C:3, XIX(b), and accordingly, we vacate and remand.

When reviewing a finding of abuse or neglect, we will sustain the findings and rulings of the trial court unless they are unsupported by the evidence or tainted by error of law. In re Tracy M., 137 N.H. 119, 125 (1993). We defer to the court's assessment of the evidence, see id., and view the facts in the light most favorable to the court's decision, see In re Ethan H., 135 N.H. 681, 687 (1992).

A "[n]eglected child" is defined, in relevant part, as a child:

(b) Who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, when it is established that the child's health has suffered or is likely to suffer serious impairment; and the deprivation is not due primarily to the lack of financial means of the parents, guardian, or custodian . . . .

RSA 169-C:3, XIX(b) (emphasis added). DCYF bears the burden of proving neglect allegations by a preponderance of the evidence. See RSA 169-C:13 (2022). "'Serious impairment' means a substantial weakening or diminishment of a child's emotional, physical, or mental health or of a child's safety and general well-being." RSA 169-C:3, XXVII-a (2022). "Statutory neglect is not the actions taken or not taken by the parent or parents"; rather, "it is the likelihood of or actual serious impairment of the child's physical, emotional, and mental well being," which are the conditions of neglect that must be repaired and corrected in the circuit court process. In re G.B., 174 N.H. 575, 581 (2021) (quotation and brackets omitted). The only issue on appeal is whether the trial court erred when it dismissed the petitions for insufficient evidence because DCYF did not present evidence about the parents' financial means.

As the petitioner, DCYF had the burden to prove, by a preponderance of the evidence, that any deprivation of parental care or control under RSA 169-C:3, XIX(b) was "not due primarily to the lack of financial means of the parents, guardian, or custodian." RSA 169-C:3, XIX(b); see RSA 169-C:13 (establishing that the petitioner has the burden to prove allegations in support of the petition by a preponderance of the evidence). However, it was legal error for the trial court to conclude that, in order to meet that burden, DCYF was required to provide "evidence about the financial status of the parents." The inquiry under RSA 169-C:3, XIX(b) is not whether a child's parents possess or lack financial means; it is whether a lack of financial means is the primary cause of

3

neglect.  See RSA 169-C:3, XIX(b) (requiring proof that neglect "is not due primarily to the lack of financial means of the parents, guardian, or custodian" (emphasis added)).  Providing evidence that the parents do not lack financial means may be one way for DCYF to make this showing; however, DCYF may also do so by providing evidence that neglect was primarily due to something other than a lack of financial means.  In other words, DCYF may carry its burden of proving by a preponderance of the evidence that a lack of financial means was not the primary cause of neglect by proving that something else, unrelated to the parents' financial means, was the primary cause.  See In re A.H., 842 A.2d 674, 688 (D.C. 2004) ("[W]here there is no nexus between the act underlying the ultimate finding of neglect and the mother's financial circumstances, it is plain enough without the need for other evidence that the deprivation is due to reasons other than a lack of financial means." (quotation and citation omitted)).

We therefore conclude that the trial court erred as a matter of law when it dismissed the petitions based on its erroneous conclusion that DCYF failed to meet its burden under RSA 169-C:3, XIX(b) because it did not provide evidence of the parents' "financial status."  See Tracy M., 137 N.H. at 125.  Accordingly, we vacate the decision of the trial court and remand for the trial court to determine, in accordance with this opinion, whether H.B. and G.B were neglected.

Vacated and remanded.


MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.